# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

BOBBY LESTER,

                        Plaintiff,

v.                                    CIVIL ACTION NO.   2:13-cv-21447

CITY OF GILBERT, et al.,

                        Defendants.


JIMMY WEST,

                        Plaintiff,

v.                                    CIVIL ACTION NO.   2:13-cv-21448

CITY OF GILBERT, et al.,

                        Defendants.


### MEMORANDUM OPINION AND ORDER

    Lester West and Jimmy West (collectively, "Plaintiffs") bring these companion cases[1]

against several law enforcement officials and government entities: the City of Gilbert; Gilbert

police officer Nathan Glanden, in both his personal capacity and as an officer; Mingo County

Sheriff's Deputy Larry Thomas, in both his personal capacity and as an officer; the West

Virginia State Police; West Virginia State Police troopers J. R. Tupper, C. A. Douglas, and J.T.

---

[1] Although two separate cases have been filed, the two Complaints, the underlying facts of the dispute, and the pending motions in both cases, as well as their briefing, are all almost identical.   The Court will consider the cases and motions together.

Robinson, in both their personal capacity and as officers; and five Does (collectively, "Defendants"). Plaintiffs' Complaints stem from an alleged incident of police brutality against them both.   As against the law enforcement officials, Plaintiffs allege § 1983 civil rights violations, assault, and battery.   As against the government entities, Plaintiffs allege § 1983 municipal liability, negligent hiring and retention, and negligent supervision.

Pending before this Court are motions for summary judgment filed by Defendant Larry Thomas (ECF 51 in 2:14-cv-21447; ECF 57 in 2:14-cv-21448), motions for summary judgment filed by Defendant Nathan Glanden (ECF 53 in 2:14-cv-21447; ECF 59 in 2:14-cv-21448), motions for summary judgment filed by Defendant City of Gilbert (ECF 55 in 2:14-cv-21447; ECF 55 in 2:14-cv-21448), motions for summary judgment filed by Defendants C.A. Douglas, J.T. Robinson, J.R. Tupper, and West Virginia State Police (ECF 57 in 2:14-cv-21447; ECF 61 in 2:14-cv-21448), and motions by Plaintiffs to continue the deadline to respond to the summary judgment motions (ECF 60 in 2:14-cv-21447; ECF 64 in 2:14-cv-21448).

Defendants filed their motions for summary judgment on October 21, 2014.   On November 4, 2014, the deadline for responses, Plaintiffs moved for a one-week continuance of the deadline to file their responses.   Their motions were unopposed, and Plaintiffs filed their responses a week later.   At this point Plaintiffs motions to continue [ECF 60 in 2:14-cv-21447; ECF 64 in 2:14-cv-21448] are **DENIED AS MOOT**, although the Court will proceed to consider Plaintiffs' responses.

With regard to Defendant Larry Thomas' motions for summary judgment [ECF 51 in 2:14-cv-21447; ECF 57 in 2:14-cv-21448] the Court **GRANTS** the motions, because they are unopposed. Therefore, Plaintiffs' claims against Defendant Larry Thomas are **DISMISSED**.

With regard to the motions for summary judgment filed by Defendants C.A. Douglas, J.T. Robinson, J.R. Tupper, and West Virginia State Police [ECF 57 in 2:14-cv-21447; ECF 61 in 2:14-cv-21448], the Court **GRANTS IN PART** the motions insofar as they seek summary judgment as to claims against Defendant West Virginia State Police, because Plaintiffs have agreed to its dismissal.   Therefore, Plaintiffs' claims against Defendant West Virginia State Police are **DISMISSED**.   However, for the reasons set forth below, the Court **DENIES IN PART** the motions insofar as they seek summary judgment as to claims against the individual officers.

Also for reasons set forth below, the summary judgment motions filed by Defendant City of Gilbert [ECF 55 in 2:14-cv-21447; ECF 55 in 2:14-cv-21448] are **GRANTED**, while the summary judgment motions filed by Defendant Nathan Glanden [ECF 53 in 2:14-cv-21447; ECF 59 in 2:14-cv-21448] are **DENIED**.

## I. FACTUAL BACKGROUND[2]

When Defendant Larry Thomas, a deputy with the Mingo County Sheriff's Department, came home to his trailer in the Gilbert Creek, WV area on the night of August 19, 2011, he found his door kicked in and his duty gun and gun belt stolen.   According to Defendant C.A. Douglas, this was "a pretty audacious crime."   To investigate the gun theft, Thomas enlisted the aid of Defendant Nathan Glanden, an officer with the City of Gilbert who grew up in Gilbert Creek and knew the area and its residents well, and J.R. Tupper and C.A. Douglas, troopers with the West Virginia State Police.   The four of them set off together to obtain leads as to where the gun might be.   Their first destination was the residence of Plaintiff Jimmy West and his uncle,

---

[2]  The following facts are based on the depositions of Plaintiff Jimmy West, Plaintiff Bobby Lester, Defendant Nathan Glanden, Defendant Larry Thomas, Defendant C.A. Douglas, Defendant J.R. Tupper, and Dr. Howard Newmark and Plaintiffs' medical records.   They are not seriously disputed, unless otherwise noted.

Plaintiff Bobby Lester, who lived in a trailer a short distance up the creek from Thomas' trailer. The Plaintiffs were known to both Glanden and Douglas for various past run-ins with the law.[3]

Shortly after midnight on August 20, 2011, Plaintiffs West and Lester were laying on a mattress in their living room when Defendant Glanden came to their trailer door.[4]   The other three officers were with him.[5]   West went to the door, and Glanden questioned him about the stolen gun. Lester testified that the officers "looked at [his] nephew like he had something to do with it" and accused West of stealing the gun.   West testified that Glanden "asked me to tell him where the gun was, did I know anything about it.   Then he asked me to tell him where it was. If I didn't know where it was, to tell him—if I didn't have it, to tell him where it was." West said he didn't know about the gun,[6] and the officers left.   To this much the parties generally agree, but from here their versions of events diverge rather significantly.

According to the Defendants' testimonies, the officers visited a series of other individuals until around 3:30 a.m. and did not return to the Plaintiffs' trailer.

According to the Plaintiffs' testimonies, upon departing Defendant Glanden stated that if the officers did not find the gun, "he will be back in a couple of hours and hell will be coming with him."   True to his word, Glanden reappeared about an hour later at Plaintiffs' trailer with

---

[3]   Glanden testified that he had dealt with Lester and West for numerous things over the years, including grand theft, conspiracy to commit burglary, transferring and receiving stolen property, public intoxication, traffic violations, and illegal distribution of prescription narcotics.   He also testified to having known them and their families for a long time.   Douglas testified to having arrested West for driving under the influence and insurance fraud prior to August 19, 2011 as well as that Lester had a "reputation . . . in the community" for being "somebody who would steal and will illegally do drugs."

[4]   According to the Plaintiffs' testimonies, Glanden knocked on their closed trailer door.   Glanden, Thomas, and Tupper testified that either there was no door or the door was open.

[5]   Lester testified that Gilbert police officer Brad Hatfield was also present.

[6]   The Plaintiffs and troopers Douglas and Tupper testified that West said he knew nothing about the gun.   Glanden and Thomas testified that West named some other individuals that might have information about the gun.

several other officers.   West testified that there were five officers and identified Defendant Glanden, Defendant Douglas, Defendant Robinson, and City of Gilbert police officer Brad Hatfield.   Lester testified that there were about eight officers and identified Defendant Glanden, Defendant Robinson, Defendant Tupper, and Hatfield.[7]   The officers divided up into two roughly equal groups:   one rushed in through the living room door, the other kicked in the bedroom door.   They then commenced to beat the Plaintiffs savagely.

West estimated that the beating last fifteen to twenty minutes, while Lester estimated thirty.   Both testified that it "felt like forever."

During that time, West was called a "faggot," and three or four officers beat him repeatedly with fists, a stick, and a slapjack in his ribs, his leg, and his head as he lay on his mattress trying to protect his ribs and head.   The officers stopped hitting West long enough to hold his eyes open and pour liquid laundry detergent into his eyes.   While one officer was hitting West in the head, which the laundry detergent had made slippery, the officer's hand slipped and broke West's nose.   His head was put face-down into a mattress, and officers in boots stood on his head.   A bear rug was pulled off the wall, its tongue was pulled out, and the tongue was stuck into West's mouth.   After they had finished beating him, the officers sprayed West with pepper spray.   Lester, laying beside West on the mattress, had one officer on each side of him, each one beating him.   According to Lester, the officers called them "fags, queers, stuff.   Just all kinds of vulgar talk."   While police stomped on Lester's disabled leg, Officer Glanden explained to him that "this ain't cops on TV.   This is real cops."   Officers busted light bulbs and threw cans of food through the windows.   Before leaving, the officers told Lester and

---

[7]   Brad Hatfield was not named as a defendant in these cases.

West that if they told anyone about this, they would make their lives "a living hell."

West and Lester went to a hospital at around 4:00 p.m. on August 20, 2011.   West reported pain to the right side of his ribs, to his head, and to his lower back and was observed to have abrasions to his nose and forehead, a nasal fracture, and a head injury.   Lester was observed to have significant bruising around his eyes and nose and contusions of the face, nose, chest wall, left hip, and left knee.   Lester stated to his treating physician that he was beaten up by the Gilbert Police, the State Police, and the Mingo County Police at 3:00 a.m.   A nurse made the following notes in West's treatment report:

> PT REPORTS ASSAULTED BY GILBER POLICE, STATE POLICE, MINGO CO. SHERIFF DEPART.   ONSET BETWEEN 11 & 12 AM.   PT REPT POLICE CAME TO MOM'S TRAILER QUESTIONED HIM ABOUT A BURGLARY.   PT REPORTS HE TOLD OFFICE N. GLANDEN THAT HE AND HIS UNCLE HAD BEEN CAR RACES AT THUNDER VALLEY SPEEDWAY.   REPORTS OFFICE LEFT THEN LATER RETURNED WITH 7 OR 8 STRATE TROOPERS.   PT REPORTS OFFICERS PUT DISHWASHING LIQUID IN HIS EYES, BEGAN TO BEAT HIM AND HIS UNCLE.   POUR POP ON BED, MACED HIM, PUNCHED REPEATEDLY IN HEAD AND FACE, KICKED IN RIBS THEN RAKE BOOT ACROSS HIS RT SIDE/RIB REGION REPEATEDLY.   BROKE WINDWO IN TRAILER, TURNER OVER BOXES, TORE DOWN ABEAR RUG, RIPPED OUT TONGUE ON BEAR RUG, PT REPORTS HE WAS THEN TREATED NOT TO REPORT INCIDENT TO ANYONE.   PT REPORTS HE WAS NOT ARRESTED, OR ANY CHARGES FILED AGAINST HIM.[8]

---

8  The original text, which contains multiple spelling and grammar mistakes, has been reproduced without alterations.

*II. APPLICABLE LAW*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact."   Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party."   *The News & Observer Publ. Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   When construing such factual issues, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]."   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production."   *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).   Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that

there is a genuine issue for trial."   *Liberty Lobby*, 477 U.S. at 256.   "The mere existence of a

scintilla of evidence" in support of the nonmoving party is not enough to withstand summary

judgment; the judge must ask whether "the jury could reasonably find for the plaintiff."   *Id.* at

252.

### III. DISCUSSION

In their motions for summary judgment, Defendants C.A. Douglas, J.T. Robinson, J.R.

Tupper, and West Virginia State Police assert that the state troopers are entitled to qualified

immunity as to the § 1983 claims; Defendant Nathan Glanden asserts that there is no genuine

issue of material fact as to the § 1983 claims or as to the state law assault and battery claims; and

Defendant City of Gilbert asserts that there is no genuine issue of material fact as to the § 1983

municipal liability claims or as to the state law negligent hiring and retention and negligent

supervision claims.

A. *§ 1983 Claims*

1. *Bystander Liability*

42 U.S.C. § 1983 provides that

> every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the
> United States or any person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.   In order to prevail on a § 1983 claim, a plaintiff must show that the

defendant deprived him of a right secured by the Constitution and laws of the United States and

that the defendant acted under color of state law.   *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S.

40, 49–50 (1999).   Section 1983 claims in which it is alleged that law enforcement officers used

8

excessive force in the course of an arrest, investigatory stop, or other "seizure" of a person are analyzed under the "objective reasonableness" standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388–89 (1989).

Defendant Glanden does not dispute that Plaintiffs' description of their beating by a group of police officers, if true, deprived them of a federally protected right, nor does he assert that the alleged beating was objectively reasonable. Instead, the memoranda in support of his motions for summary judgment argue that Plaintiffs have failed to show that Glanden deprived them of a federally protected right because Plaintiffs cannot affirmatively identify Glanden as one of the officers who used force against them. At best, Glanden argues, Plaintiffs can merely show that he was present during the alleged beating.

However, Plaintiffs' responses correctly point out that affirmatively identifying Glanden as one of the officers that used force against them is not essential to their claim. *See*, *e.g.*, *Sanchez v. City of Chicago*, 700 F.3d 919, 926 n.3 (7th Cir. 2012) ("[I]n the Fourth Amendment context, it is not essential that the identity of the individual officer who applied the force be established.") "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's County, Md.*, 302 F.3d 188, 204 (4th Cir. 2002).[9]

Glanden's reply memoranda argue for the first time that Glanden had no reasonable opportunity to prevent the alleged beating of Defendants, because, even if Defendant had been

---

[9] Plaintiffs allege that the officers poured laundry detergent into West's eyes, rendering him unable to see. The absence of bystander liability would create perverse incentives to engage in just such behavior. Absent bystander liability, "all that police officers would have to do to use excessive force on an arrestee without fear of consequence would be to put a bag over the arrestee's head and administer the beating in silence." *Velazquez v. City of Hialeah*, 480 F.3d 1232, 1233 (11th Cir. 2007).

present during the alleged beating, "it would not have been reasonable to expect a single officer to stop up to seven (7) other law enforcement officers from an alleged assault."   Glanden's cursory argument, to which Plaintiffs had no opportunity to respond, might hold some superficial appeal if one imagined the other seven officers as a sort of herd of beasts without faculties of reasoning bent on beating the Plaintiffs for up to half an hour and assumed that Glanden's only possible course of action for preventing Plaintiffs' injuries would have been the impossible task of physically overpowering the seven.   That is obviously not the case here.

Plaintiffs testified that Glanden had told them he would be bringing "hell" with him when he came back to their trailer.   Lester testified that, while officers stomped on his disabled leg, Glanden told him that "this ain't cops on TV. This is real cops."   Plaintiffs further testified that Glanden came into their trailer together with the other officers and was in or near their small trailer over the course of the entire fifteen to thirty minutes during which the alleged beatings took place.   Based on this evidence a reasonable jury could find that Glanden was, far from a powerless bystander, in fact a ringleader who instigated the alleged beatings, who made no attempt to prevent the officers from initiating their attack, who actively encouraged the beatings, and who made no attempt to persuade the other officers to stop their attack despite ample time and opportunity to do so.   At the very least, a genuine issue of material fact remains as to whether Glanden had a reasonable opportunity to intervene.

Therefore, the Court **DENIES** summary judgment as to Plaintiffs' § 1983 claims against Defendant Nathan Glanden.

*2. Qualified Immunity*

Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   In analyzing the assertion of a qualified immunity defense, the first task of the Court is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct.   *See Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir. 1996).   The Court then must consider whether, at the time of the claimed violation, that right was clearly established and "'whether a reasonable person in the official's position would have known that his conduct would violate that right.'"   *Id.* (quoting *Gordon v. Kidd*, 971 F.2d 1087, 1093 (4th Cir. 1992)).

Defendants C.A. Douglas, J.T. Robinson, J.R. Tupper, and West Virginia State Police argue that C.A. Douglas, J.T. Robinson and J.R. Tupper are entitled to qualified immunity because the Plaintiffs cannot prove that they knowingly violated a clearly established law. However, their argument is neither that the alleged beatings did not violate a clearly established right nor that a reasonable person in their position would not have known that the alleged beatings would violate a clearly established right.   Instead, they point to the officers' version of events, in which the officers never returned to the Plaintiffs' residence, much less beat them, arguing that this was clearly lawful.   Thus, in asserting a qualified immunity defense, Defendants C.A. Douglas, J.T. Robinson, J.R. Tupper, and West Virginia State Police essentially challenge only the truthfulness of Plaintiffs' testimonies about troopers C.A. Douglas, J.R. Tupper, and J.T. Robinson coming to their trailer and beating them.   They argue that Plaintiffs'

11

medical records do not prove that they were beaten by the troopers, while police records indicate that troopers C.A. Douglas and J.R. Tupper were investigating other suspects that night and that trooper J.T. Robinson was working in another town on the night in question.   They implicitly concede that the alleged beatings, if true, would overcome a qualified immunity defense.   These arguments serve merely to highlight the existence of a genuine issue as to the material fact of whether or not troopers C.A. Douglas, J.R. Tupper, J.T. Robinson went to Plaintiffs' trailer and beat them, which makes summary judgment inappropriate.

Therefore, the Court **DENIES** summary judgment as to Plaintiffs' § 1983 claims against Defendants C.A. Douglas, J.R. Tupper, and J.T. Robinson.

*3. Municipal Liability*

Liability of a municipality under § 1983 for the actions of its officers and employees cannot be premised on the doctrine of *respondeat superior*.   *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978).   Instead, a plaintiff seeking to establish liability by a local government defendant must show that the execution of a policy or custom of that municipality caused the violation.   *Id.* at 694; *Riddick v. Sch. Bd. of the City of Portsmouth*, 238 F.3d 518, 522 (4th Cir. 2000).   Thus, the City of Gilbert cannot be held liable for the alleged unconstitutional conduct of Defendant Glanden simply because Glanden was an employee of the City of Gilbert.   Rather, liability on the part of the City of Gilbert for Glanden's alleged unconstitutional conduct arises only if his alleged unconstitutional conduct represented or carried out official city policy or custom.

Plaintiffs argue that that the fact that Glanden had not received any training from the City of Gilbert on the use of excessive force amounted to a policy by the City of Gilbert which caused

12

the alleged constitutional violation.   Plaintiffs also argue that City of Gilbert failed to put in place an adequate mechanism for the investigation of alleged uses of force and for the discipline of officers that have engaged in excessive use of force and that this amounted to a policy by the City of Gilbert which caused the alleged constitutional violation.

Municipal policies may be found not only in written regulations or in affirmative acts but also in certain omissions on the part of policymaking officials.   *See Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989)).   A failure to train police officers can amount to an actionable policy under § 1983 when it can be shown that it evidences "deliberate indifference" to the rights of persons with whom the police come into contact.   *Canton*, 489 U.S. at 387–88.   Similarly, a failure to investigate incidents of force, and by extension, a failure to discipline officers for use of excessive force, can amount to an actionable policy under § 1983 when such failure evidences "deliberate indifference" to the rights of persons with whom the police come into contact.   *McKnight v. D.C.*, 412 F. Supp. 2d 127, 133 (D.D.C. 2006).   *See also Vineyard v. Cnty. of Murray, Ga.*, 990 F.2d 1207, 1212 (11th Cir. 1993) (inadequate policies of supervision, discipline and training of police officers demonstrated the deliberate indifference to the rights of arrestees to be free from the use of excessive force).   "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such failure under § 1983."   *Canton*, 489 U.S. at 389.   Thus, "failure to train can only form a basis for liability if 'it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations.'"   *Lytle v. Doyle*, 326 F.3d 463, 474 (4th Cir. 2003) (citing *Canton*, 489 U.S. at 397 (O'Connor, J., concurring in part and dissenting in part)).   In addition, a

plaintiff must show "a direct causal link . . . between a specific deficiency . . . and the particular violation alleged," such that "the injury [would] have been avoided had the [policy not been] deficient in the identified respect."   *Buffington v. Baltimore Cnty.*, 913 F.2d 113, 122 (4th 1990) (citing *Canton*, 489 U.S. at 391).

Plaintiffs have failed to present evidence that the City of Gilbert displayed deliberate indifference to the constitutional right of persons with whom the police come into contact by failing to train Glanden.   It is undisputed that at the time of the alleged beatings Glanden had been with the City of Gilbert for less than three months, had nine years of prior experience as a law enforcement officer with the Mingo County Sheriff's Department, and had extensive prior training.[10]   There is no suggestion in the record that Glanden did not receive training regarding excessive force from his prior employer, nor any reason to suspect that the passage of seven years since his prior employment as a police officer would have rendered that training ineffective by the time of the conduct alleged here.[11]   There is also nothing in the record to suggest that the City of Gilbert did not give excessive force training to Officer Glanden, an experienced police

---

[10]  Glanden worked for the Mingo County Sheriff's Department from 1995 to 2004.   During that period, he attended the West Virginia State Police Academy and also received certifications attesting that he met the minimum entry-level law enforcement training program requirements, was qualified as a pistol expert, completed a course in crime scene investigation, attended a seminar on investigating injuries, attended a law enforcement training seminar, and was trained in the proper use of cap stun aerosol spray and in canine narcotics detection.   Glanden voluntarily left law enforcement in 2004.   He returned to law enforcement on June 7, 2011, when he was hired as a police officer by the City of Gilbert.   By the time of the alleged beatings on August 20, 2011, he was not yet re-certified as a law enforcement officer, nor had he received any new training in law enforcement since 2004.   According to the sworn affidavit of Michael Rasmussen, Chief of Police of the City of Gilbert, Glanden's initial certification was frozen when he left law enforcement; it was neither revoked nor suspended, and municipal police officers in West Virginia are allowed a grace period to unfreeze their certification.   Officer Glanden unfroze his certification on September 30, 2011.

[11]  Plaintiffs's responses to the City of Gilbert's motions for summary judgment concede that Officer Glanden "did receive training on search and seizure from the West Virginia State Police Academy" but assert that this was "not until after injuring plaintiff[s]."   However, the record shows that Officer Glanden received training from the West Virginia State Police Academy prior to working for the City of Gilbert, and there is no evidence from which the Court may infer that this prior training did not include an excessive force component.

officer, as a result of an affirmative decision not to ensure that its police officers be provided with excessive force training.   No reasonable jury could find that the City of Gilbert was deliberately indifferent in failing to provide Glanden with additional training by the time of the alleged beatings.

On the other hand, Plaintiffs arguably have presented sufficient evidence that the City of Gilbert had inadequate policies of investigation, supervision, and discipline of its police officers. Plaintiff West testified that his mother complained to Gilbert Chief of Police about the alleged beating of her son at issue in this case, while the City of Gilbert stated in a response to a discovery request that it had not investigated the matter because it had never received the complaint.   Defendant Thomas also testified that, while previously working as a City of Gilbert police officer, he had been sued in a civil lawsuit for allegedly handcuffing a man to a chair and beating him.   When asked whether the City of Gilbert did any type of investigation into the matter, Thomas responded that he "didn't think so."   When asked whether Gilbert has any policies or procedures in place to conduct an investigation, Thomas responded that he did not know.   Finally, the City of Gilbert does not appear to have any internal policies regarding the investigation of complaints.[12]

Plaintiffs concede that evidence of only two alleged violations is not enough to show a pattern of violations.   However, Plaintiffs urge the Court to follow a line of cases finding

---

[12] The City of Gilbert argues that its relevant procedures are contained in a policy and procedure manual provided to the Plaintiffs in discovery.   However, the City of Gilbert has in fact provided an "employee handbook" provided to all City of Gilbert employees (not only police officers), which does not detail any specific policies on the discipline of police officers for the excessive use of force or on the investigation of complaints.   The policy outlined in the employee handbook which is closest to the issue at hand is the section under the heading "Conduct Standards & Discipline" which notes that "[t]he Town reserves the right to discipline or discharge any employee for violating any Town policy, practice or rule of conduct" including "[d]isorderly conduct, fighting, or other acts of violence"; "[f]ailing to follow Instructions or Town procedures"; "[f]ailing to follow established safety regulations"; or "[b]eing convicted of a crime that indicates unfitness for a job, embarrassment to the Town, or presents a threat to the Town or its employees in any way."

deliberate indifference without a pattern of violations. *See*, *e.g.*, *Allen v. Muskogee, Okl.*, 119 F.3d 837, 842 (10th Cir. 1997) ("[E]vidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability."); *Vineyard v. Cnty. of Murray, Ga.*, 990 F.2d 1207, 1212 (11th Cir. 1993) ("[A] single constitutional violation may result in municipal liability when there is sufficient independent proof that the moving force of the violation was a municipal policy or custom."). These cases find support in the Supreme Court's observation that

> it may happen that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*City of Canton v. Harris*, 489 U.S. 378, 390 (1989). The need to investigate complaints of excessive force and to discipline police officers for excessive force might fairly be said to be so obvious, and the failure to do so so likely to result in the violation of constitutional rights, that the failure to do so may be reasonably said to constitute deliberate indifference to the rights of citizens. Plaintiffs have not only pointed to evidence from which it may be inferred that two alleged incidents of excessive force that were egregious in nature came to the attention of the City of Gilbert yet were not investigated. They have also pointed to evidence that the City of Gilbert does not have a procedure for investigating excessive force complaints, despite the obvious potential for the lack of a procedure for conducting internal investigation and discipline to encourage the recurrence of serious violations.

16

Ultimately, however, even assuming that the Plaintiffs have presented sufficient evidence at this stage that the City of Gilbert had an official policy of deliberate indifference to the rights of its citizens, and despite a general tendency this might have to encourage serious violations, the Plaintiffs have failed to make the requisite showing that the policy was an actual cause of the specific violations alleged here.   Plaintiffs argue that the absence of a mechanism to investigate complaints against police officers caused the alleged constitutional violations, because if one had been in place the City of Gilbert would have investigated the prior claim of excessive force by Defendant Thomas and would as a result have provided excessive force training and decided that it should not allow uncertified police officers to patrol alone.   However, Plaintiffs' hypothesis is without any evidentiary support.   In addition, Plaintiffs have failed to point to any evidence that the absence of a complaint investigation mechanism in any other way motivated the violations alleged here.

Therefore, the Court **GRANTS** summary judgment as to Plaintiffs' § 1983 claims against Defendant City of Gilbert and **DISMISSES** those claims.

*A. State Law Claims*

*1. Battery*

"An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."   *W. Va. Fire & Cas. Co. v. Stanley*, 216 W. Va. 40, 52 (2004).

Defendant Glanden argues that Plaintiffs have failed to show that there is any genuine issue of material fact as to their battery claim against him, because Plaintiffs have failed to offer any testimony or evidence that Glanden ever laid a hand on them.

Plaintiffs argue that because West testified that he was hit by Gilbert police officers, and because Glanden testified that he was the only Gilbert police officer at West's home, the jury could find that Glanden participated in the alleged beatings.  This argument mischaracterizes Glanden's testimony.  Glanden only testified to being at Plaintiffs' trailer during the initial questioning, not during the later alleged beating.  Although West did testify to being hit by Gilbert police officers, and although his medical records indicate that he also affirmed to his nurse that he was "assaulted" by Gilbert police, West and Lester both alleged that there were two Gilbert police officers present during the alleged beating.  Glanden's testimony provides no evidence from which a jury could conclude that he was the only Gilbert police officer present during the alleged beating, nor is there any other evidence from which this inference might be drawn in Plaintiffs' favor.   There is no evidence from which a reasonable jury could find that Glanden made any contact with the Plaintiffs, harmful or otherwise.

Therefore, Court **GRANTS** summary judgment as to Plaintiffs' battery claims against Defendant Glanden and **DISMISSES** those claims.

*2. Assault*

"An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Id.*

18

Defendant Glanden argues that Plaintiffs have failed to show that there is any genuine issue of material fact as to their assault claim against him.   The Court has already noted that there is no evidence that Glanden ever struck Plaintiffs.   However, Plaintiffs testified that Glanden stormed into their trailer in the middle of the night, together with four to seven other officers, after earlier warning Plaintiffs that he would be coming back bringing "hell" with him. A reasonable jury could find that these actions were intended to cause an imminent apprehension of a harmful or offensive contact and that they did in fact cause such an imminent apprehension.

Therefore, the Court **DENIES** summary judgment as to Plaintiffs' assault claims against Defendant Glanden.

### 3. Negligent Hiring and Retention

West Virginia recognizes a cause of action for negligent hiring and retention. *See State ex rel. W. Va. State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997).   The West Virginia Supreme Court of Appeals applies the following test for a claim based on negligent hiring and retention under West Virginia law:

> [W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee?   Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*McCormick v. W. Va. Dep't of Pub. Safety*, 503 S.E.2d 502, 506 (W. Va. 1998) (quoting *Taylor*, 499 S.E.2d at 289 n.7).   The court must consider "the nature of the employee's job assignment, duties and responsibilities." *Id.* at 507.   The duty with respect to hiring and retention increases "as the risks to third persons associated with a particular job increase." *Id.*   An "employer's duty is heightened" when the prospective employee is a police officer, as police officers are

19

permitted to carry guns, to use necessary force to effect arrest, and to enter civilian residences under certain circumstances.  *Woods v. Town of Danville*, 712 F. Supp. 2d 502, 514 (S.D.W. Va. 2010).

Defendant City of Gilbert argues that there is no genuine issue of material fact as to Plaintiffs' negligent hiring claims, because the Plaintiffs have offered no evidence either that Officer Glanden has a poor history of employment prior to being hired or that an investigation into his background should have caused the City of Gilbert to have foreseen any risks associated with hiring him.   At the time that he was hired by the City of Gilbert, Officer Glanden had nine years of experience as a law enforcement officer, and there is no evidence that during that time he was subject to any suspensions, disciplinary actions, or internal investigations.   Nor is there any evidence that Officer Glanden should have been but was not disciplined or investigated.

Plaintiffs point to the fact that, at the time of his hiring by the City of Gilbert, Officer Glanden was not a certified police officer and had received no training in law enforcement since 2004, including in the use of excessive force.   This evidence has no bearing on the officer's character, trustworthiness, honesty, or propensity for anger, violence, or criminal conduct.   At the most it touches on the officer's competence.   However, there is no evidence that the lapsed certification, which was remedied in less than four months, increased the risk to third parties. Nor is there any evidence to suggest that the intervening years since Officer Glanden's last trainings increased the risk to third parties.

Therefore, the Court **GRANTS** summary judgment as to Plaintiffs' negligent hiring claims against Defendant City of Gilbert and **DISMISSES** those claims.

*4. Negligent Supervision*

To state a claim for negligent supervision or training under West Virginia law, a plaintiff must show that an employer "failed to properly supervise" an employee and, as a result, the employee "proximately caused injury to" the plaintiff. *Woods*, 712 F. Supp. 2d at 514 (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)). In *Taylor*, the West Virginia Supreme Court "treat[ed] negligent supervision like other claims based in negligence." *Woods*, 712 F. Supp. 2d at 515.

Plaintiffs argue that the City of Gilbert was negligent in supervising Officer Glanden, because at the time of his hiring he was not a certified police officer and had received no training in law enforcement, in particular in excessive force, since 2004. However, Plaintiffs do not explain why the extent of Glanden's training and certification would be relevant to the question of how he was supervised in the execution of his duties, nor do they present any evidence that a lack of training or of certification was a proximate cause of the conduct alleged here.

Plaintiffs also assert that the City of Gilbert failed to supervise Glanden because they allowed an uncertified officer to go out of jurisdiction without any other officer from the City of Gilbert. However, Officer Glanden testified that he is allowed to work outside of city limits if requested by another law enforcement agency and that he was requested to investigate outside city limits by Deputy Thomas, with the Mingo County Sheriff's Department. There is no evidence to the contrary.

Therefore, the Court **GRANTS** summary judgment as to Plaintiffs' negligent supervision claims against Defendant City of Gilbert and **DISMISSES** those claims.

21

*IV. CONCLUSION*

For the reasons stated above, the summary judgment motions filed by Defendant City of Gilbert [ECF 55 in 2:14-cv-21447; ECF 55 in 2:14-cv-21448] are **GRANTED**; the summary judgment motions filed by Defendant Larry Thomas [ECF 51 in 2:14-cv-21447; ECF 57 in 2:14-cv-21448] are **GRANTED**; the summary judgment motions filed by Defendants C.A. Douglas, J.T. Robinson, J.R. Tupper, and West Virginia State Police [ECF 57 in 2:14-cv-21447; ECF 61 in 2:14-cv-21448] are **GRANTED IN PART** insofar as they concern Defendant West Virginia State Police and **DENIED IN PART** insofar as they concern the individual officers; the summary judgment motions filed by Defendant Nathan Glanden [ECF 53 in 2:14-cv-21447; ECF 59 in 2:14-cv-21448] are **DENIED**; and the motions by Plaintiffs Lester and West to continue deadlines for responses to the summary judgment motions [ECF 60 in 2:14-cv-21447; ECF 64 in 2:14-cv-21448] are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        February 4, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE